IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                        Criminal Case No. 3:15cr52

MICKEL L. MARZOUK,

Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Mickel L. Marzouk's Motion for

Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion for Compassionate

Release").[1]  (ECF No. 110.)  The United States responded in opposition, (ECF No. 111), and Mr.

Marzouk replied, (ECF No. 114).[2]

This matter is ripe for disposition.  The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid the decisional process.  For the reasons articulated below, the Court will deny without

prejudice the Motion for Compassionate Release.  (ECF No. 110.)

---

[1] The Motion for Compassionate Release incorporates Mr. Marzouk's *pro se* "Motion for
Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i); The First Step Act in Light of
Changes Made to Stacking of 18 U.S.C. 924 (c); *United States v. Adam Clausen* (EDP DKT#
277 7-24-20), (214 1/2 Year Sentence Reduced to Time Served); Sentencing Disparity with
Codefendant's; Confirmed COVID-19 Cases at the Prison; Medical Conditions that Place
Petitioner in Danger; the Living Conditions under COVID-19, the Extraordinary Rehabilitation;
the Fact that Mr. Marzouks [sic] Parents Need A Primary Care Provider; and the Fact that He is
No Longer a Threat to Public Safety."  (ECF No. 102.)

[2] On May 25, 2023, Mr. Marzouk filed a *pro se* Reply to the Government's Opposition to
Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 112.)
The Court notified Mr. Marzouk that his attorney of record, John Danyluk, "is the only one who
may file in this matter," and "[t]herefore, the Court will disregard [Mr.] Marzouk's *pro se* Reply
when considering his Motion for Compassionate Release."  (ECF No. 115, at 1.)

## I. Background

**A.**     **Mr. Marzouk's Underlying Offense**

On March 31, 2015, the United States charged Mr. Marzouk by criminal information with two counts of possessing and brandishing a firearm in furtherance of a violent crime, in violation of 18 U.S.C. 924 §§ (c)(1)(A)(ii), (c)(2).  (ECF No. 37.)  On April 10, 2015, Mr. Marzouk entered into a written plea agreement, pleading guilty to Counts One and Two.  (ECF No. 41, at 1.)  Although Mr. Marzouk moved to withdraw his guilty plea, (ECF No. 57), this Court denied that motion because he had not demonstrated a "fair and just reason" for withdrawal, (ECF No. 59-1, at 16).

The Plea Agreement and the Statement of Facts describe Mr. Marzouk's underlying offenses.  (ECF Nos. 41, 42.)  Between November 2014 and February 2015, Mr. Marzouk "knowingly became part of a plan to rob [ ] cigarette distributor[s]" through armed carjackings.  (ECF No. 42 ¶¶ 3–4.)  On November 25, 2014, Mr. Marzouk and a co-conspirator, Mr. El Shamy, alerted co-conspirators that an employee of Cigarette Outlet "was loading a large amount of cigarettes into his van."  (ECF No. 42 ¶ 3.)  Three of his co-conspirators approached the employee, one brandishing a firearm, and robbed the employee at gunpoint "of over $50,000 worth of cigarettes and his vehicle."  (ECF No. 42 ¶ 3.)  Mr. Marzouk and Mr. El Shamy then paid the co-conspirators and transferred the cigarettes to a different vehicle.  (ECF No. 42 ¶ 3.)

On February 9, 2015, Mr. Marzouk "set up a proposed sale of bulk cigarettes to an employee of [ ] Tobacco Zone" and "conspired . . . to rob [the employee] of the money that [he] intended to use to purchase the bulk cigarettes."  (ECF No. 42 ¶ 4.)  In accordance with the plan, two of Mr. Marzouk's co-conspirators approached the employee as the transaction between the employee and Mr. Marzouk began.  (ECF No. 42 ¶ 4.)  With one co-conspirator brandishing a

2

firearm, Mr. Marzouk and his co-conspirators robbed the employee of approximately $35,000. (ECF No. 42 ¶ 4.)

"On November 11, 2014 and January 7, 2015, . . . [Mr.] Marzouk committed substantially similar violent crimes wherein he, and his conspirators, robbed at gunpoint employees of two businesses ... and through the use of threatened force and violence, took property and money belonging to the businesses against the will of the employees." (ECF No. 42 ¶ 5.)

Prior to sentencing, the probation officer prepared the Presentence Report ("PSR") for Mr. Marzouk, summarizing his criminal history. (ECF No. 50.) Mr. Marzouk did not have a base offense level because "Adjustments and Criminal History ... are not applicable for cases in which the conviction is a violation of 18 U.S.C. § 924(c)[,]" and "the guideline sentence for each offense is determined only by the relevant statute." (ECF No. 50 ¶ 75.) According to the law at the time, 18 U.S.C. § 924(c) provided a mandatory minimum 84 months' imprisonment on Count One and 300 months' imprisonment on Count Two, to run consecutively. (ECF No. 50 ¶ 75.) Each count also allowed for up to five years of supervised release. (ECF No. 50 ¶ 75.) Mr. Marzouk received a two-point enhancement to his criminal history computation pursuant to U.S.S.G. § 4A1.1(d) (U.S. Sent'g Comm'n 2015) because he committed the underlying offense "while under a three[-]year term of good behavior for False Statement During a Criminal Investigation." (ECF No. 50 ¶ 40.) This increased Mr. Marzouk's criminal history category to Category III.[3] (ECF No. 50 ¶ 41.)

---

[3] In the 2023 Criminal History Amendments to the Untied States Sentencing Guidelines, Part A of Amendment 821 (status points under § 4A1.1) and Part B of Amendment 821 (Zero-Point Offenders) changed this guideline and did so, importantly, retroactively. What is now U.S.S.G. § 4A1.1(e) — relative to the former § 4A1.1(d) — can reduce the number of points applicable to an offender's criminal history when the offense was committed while under a

On January 27, 2016, this Court sentenced Mr. Marzouk to the statutorily-required 84 months' incarceration on Count One and 300 months' incarceration on Count Two, to run consecutively, with 5 years of supervised release on each count to be served concurrently. (ECF No. 62, at 2–3.)[4]

On April 19, 2021, this Court reduced Mr. Marzouk's sentence to 172 months' imprisonment in total because the First Step Act ended "sentence 'stacking[]' by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already has become final." (ECF No. 101, at 3 (sealed) (quoting *United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020)).)  Prior to this reduction, Mr. Marzouk filed two *pro se* motions:  (1) a Motion for Relief Under the First Step Act and (2) a Motion Seeking a Sentence Reduction Based on Extraordinary and Compelling Circumstances in Conjunction with the *Holloway* Doctrine. (ECF Nos. 72, 91.)  This Court acknowledged that "if sentenced [in 2021], [Mr. Marzouk] would not receive a 32-year term of imprisonment." (ECF No. 101, at 6

---

criminal justice sentence.  The application to zero-point offenders could also reduce an individual's criminal history points.

Were the Court to apply Amendment 821 retroactively, Mr. Marzouk's total criminal history points would drop from 4 to 2. (ECF No. 50 ¶ 39.)  This would change Mr. Marzouk's criminal history category to II.  However, because this case addresses the mandatory minimum imposed by 18 U.S.C. § 924(c), this change would not affect Mr. Marzouk's sentence.

[4] Pursuant to the Sentence Guidelines in effect at the time Mr. Marzouk committed his offenses, a second or subsequent count of conviction under § 924(c) triggered a higher mandatory minimum penalty, as well as mandatory "stacking" of these sentences for each count of conviction.  This was so because, in *Deal v. United States*, 508 U.S. 129 (1993), the United States Supreme Court held that even when multiple counts under § 924(c) were in the same indictment, the conviction on the first count did not have to be final before triggering the mandatory increases and stacking provisions.  Thus, a defendant such as Mr. Marzouk who faced two or more counts for possessing and brandishing a firearm, in violation of § 924(c)(1)(A)(ii), in a single charging instrument would receive a mandatory minimum sentence of seven years on the first count, and twenty-five years on each additional count.

(sealed).)  However, the Court simultaneously acknowledged that "Congress did not make this portion of the First Step Act retroactive . . . [r]ather, this decision to reduce [Mr.] Marzouk's sentence . . . stems from an individualized assessment." (ECF No. 101, at 6 (sealed).)  In light of these facts and his reduced sentence, this Court denied Mr. Marzouk's *pro se* Motions as moot. (ECF No. 101, at 6 (sealed).)

As of November 19, 2024, Mr. Marzouk had served one hundred seventeen months and eight days of his 172-month imprisonment term, or approximately sixty-eight percent of his sentence. (*See* ECF No. 50 ¶ 4.)  Mr. Marzouk is housed at FCI Marianna in Marianna, Florida. *See Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited November 19, 2024).  The Bureau of Prisons ("BOP") lists Mr. Marzouk's projected release date as June 9, 2027. *Id.*

### B.    Mr. Marzouk's Motion for Reduction in Sentence and Motion for Compassionate Release

Mr. Marzouk first filed a *pro se* Motion for Reduction in Sentence ("the *Pro Se* Motion"). (ECF No. 102.)  After Counsel was appointed, Mr. Marzouk filed the instant Motion for Compassionate Release on May 3, 2023. (ECF No. 110.)  Mr. Marzouk asks this Court to reduce his sentence to time served. (ECF No. 110, at 1.)  He argues extraordinary and compelling circumstances exist for two reasons: (1) his family circumstances, (ECF No. 110, at 8); and (2) the changes made to the "stacking" provision of 18 U.S.C. 924(c), (ECF No. 110, at 4).

#### 1.    Mr. Marzouk's Family Circumstances

Mr. Marzouk contends that his parents' health creates an extraordinary and compelling reason for compassionate release. (ECF No. 110, at 8.)  Mr. Marzouk states that both parents suffer from a plethora of health conditions:  his father has multiple heart issues, cataracts, obstructive sleep apnea, among other conditions, (ECF No. 110, at 8–9), and his mother has

diabetes, nonalcoholic fatty liver disease, obstructive sleep apnea, alongside multiple other conditions, (ECF No. 110, at 9–10).  Both parents struggle "to manage daily life[,] . . . basic life functions[,] and household chores."  (ECF No. 110, at 10.)  Mr. Marzouk states that both parents are unable to care for each other and that he is the only viable caretaker for his parents.  (ECF No. 110, at 10.)

2.      **18 U.S.C. § 924(c) Stacking and § 3553(a) Factors**

Mr. Marzouk also argues that the Court should reduce his sentence because Congress ended the practice of "stacking" through enacting the First Step Act.  (ECF. No 110, at 5.)  When Mr. Marzouk was sentenced, he received the "mandatory minimum sentence of seven years on the first count, and twenty-five years" on his second count.  (ECF. No 110, at 5.)  He asserts that if sentenced today, he would receive a 14-year mandatory minimum instead of the 32-year mandatory minimum term of imprisonment that the Court originally imposed.  (ECF No. 110, at 7.)  Mr. Marzouk contends that his prior sentence reduction, based on substantial assistance, should not preclude this Court from granting a further reduction in his sentence.  (ECF No. 110, at 7.)  Additionally, he points to *United States v. El Shamy*, where this Court reduced the sentence of one of Mr. Marzouk's co-conspirators due to the stacking of § 924(c) convictions, to support his position that he should receive a further reduction of his sentence.  (ECF No. 110, at 6 (citing No. 3:15cr55, 2021 WL 3234608 (E.D. Va July 29, 2021)).)

6

Finally, Mr. Marzouk argues that the § 3553(a)[5] factors support his release.  (ECF No.

110, at 12.)  He claims that he has "bettered himself substantially," takes responsibility for his

---

[5] Section 3553(a) of Title 18 of the United States Code states:

The [C]ourt, in determining the particular sentence to be imposed, shall consider—

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

  (5) any pertinent policy statement—

    (A) issued by the Sentencing Commission . . .

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

actions, has served seven years of his sentence (at the time of the instant Motion), and has matured. (ECF No. 110, at 13–14.)  Upon his release, Mr. Marzouk plans to live with his parents and work for his father's business or utilize his commercial driver's license.  (ECF No. 110, at 14.)

### 3.    Response from the United States

The United States filed a Response in Opposition.  (ECF No. 111.)  The United States notes that Mr. Marzouk has not demonstrated that he is his parents' only available caregiver because Mr. Marzouk has three sisters who live in Richmond, Virginia, two of whom lived with their parents at the time of sentencing.  (ECF No. 111, at 10 (citing ECF No. 50, at 14).)

The United States also argues that "'the existence of stacked § 924(c) sentences [does not] necessarily [satisfy] the requirements of § 3582(c)(1)(A)(i) in *all* cases.'"  (ECF No. 111, at 6 (citing *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) (emphasis in original)).)  The United States argues that the "mere existence" of Mr. Marzouk's stacked sentence is insufficient to "clear the 'extraordinary and compelling' threshold set forth in the statute[.]"  (ECF No. 111, at 7.)  The United States asserts that Mr. Marzouk committed serious crimes and was not uneducated when doing so.  (ECF No. 111, at 7–8.)  Furthermore, the United States contends that Mr. Marzouk's "situation is not 'identical'" to that of his co-conspirator and, therefore, Mr. Marzouk's attempt to compare his position with that of his co-conspirators is without merit. (ECF No. 111, at 9.)  Finally, the United States argues that "the statutory sentencing factors weigh against release." (ECF No. 111, at 11 (referencing the 18 U.S.C. § 3553(a) factors)[6].)

---

[6] The United States points to the seriousness of Mr. Marzouk's offense, his criminal history, and the relatively short length of time served. (ECF No. 111, at 11–12.)  Furthermore, it argues that while Mr. Marzouk has made progress, he has also been sanctioned in prison three times for possessing unauthorized items.  (ECF No. 111, at 14; ECF No. 111-2.)  Finally, the

## II.  Compassionate Release Under the First Step Act of 2018

### A.      Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for

relief on compassionate release grounds without approval from the BOP.  *See Coleman v. United*

*States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020).  In 2018, Congress enacted the First Step Act

to provide incarcerated individuals the opportunity to directly petition the courts for

compassionate release under 18 U.S.C. § 3582(c)(1)(A).[7]  First Step Act of 2018, Pub. L. No.

---

United States contends that his release plan is sparse and living in the same area where he
committed the underlying offense promotes recidivism.  (ECF No. 111, at 14.)

[7] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed
except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of
Prisons, or upon motion of the defendant after the defendant has
fully exhausted all administrative rights to appeal a failure of the
Bureau of Prisons to bring a motion on defendant's behalf or the
lapse of 30 days from the receipt of such a request by the warden
of the defendant's facility, whichever is earlier, may reduce the
term of imprisonment (and may impose a term of probation or
supervised release with or without conditions that does not exceed
the unserved portion of the original term of imprisonment), after
considering the factors set forth in section 3553(a) to the extent
that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a
reduction . . .

and that such a reduction is consistent with
applicable policy statements issued by the
Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

9

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[8]

**B.     Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A); *see also McCoy*, 981 F.3d at 283 ("Congress, aware of the BOP's history of extensive delays, also

_____

[8] 28 U.S.C. § 994(t) states:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

10

provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time.") "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

The United States correctly concedes that Mr. Marzouk has exhausted his administrative remedies by "fil[ing] a request for Compassionate Release with the Warden of FCI Fairton on February 24, 2023." (ECF No. 111, at 3.)

### C.   Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]"  18 U.S.C. § 3582(c)(1)(A)(i).  Congress did not define "extraordinary and compelling reasons" in the statute.  The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons."  U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023).  The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider.  For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release.  A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at \*4, n. 7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release.  U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;
> (C) family circumstances; and,
> (D) other reasons.

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[9]

These are:

> (1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[10];

> (2) the defendant's age, *id.* § 1B1.13(b)(2)[11];

> (3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[12];

---

[9] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[10] *See* App. A, at **U.S.S.G § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[11] *See* App. A, at **U.S.S.G § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

[12] *See* App. A, at **U.S.S.G § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4) [13];

(5) 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5) [14], and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[15]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and

---

[13] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4)**.

[14] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D)**.

[15] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6)**.

compelling reasons" for a sentence reduction under the First Step Act.[16]  The *McCoy* court has

noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the

Court.  "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling

reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (quoting *United States*

*v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)); *see also United States v. Davis*, 99 F.4th 647, 658

(4th Cir. 2024) (confirming that under the 2023 Amendments, courts can still "consider any

extraordinary or compelling reason for release raised by a defendant").

    The United States Supreme Court has determined that "the First Step Act allows district

courts to consider intervening changes of law or fact in exercising their discretion to reduce a

sentence[.]"  *Concepcion v. United States*, 597 U.S. 481, 500 (2022).  District courts within the

Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the

Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and

compelling reason" for compassionate release.[17]  *See, e.g., United States v. Redd*, 444 F. Supp.

---

[16] As other courts have observed,

    [t]he Fourth Circuit has yet to address the impact the amended Sentencing
Guidelines have on *McCoy* and similar rulings or precisely how courts should
apply the amended policy statement in motions for compassionate release,
particularly motions filed before November 1, 2023.  The Court need not reach
this question, however, because [Mr. Marzouk] has failed to establish
an extraordinary and compelling reason to reduce his sentence applying both the
case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

    [17] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G.
§ 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments,
ordinarily shall not be considered when determining whether extraordinary and compelling
reasons exist.  However, subsection (c) includes an important caveat: "if a defendant otherwise
establishes that extraordinary and compelling reasons warrant a sentence reduction under this
policy statement, a change in the law (including an amendment to the Guidelines Manual that has

3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[ ] that warrant[s] a reduction to Mr. Redd's sentence"); *see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)").

A plethora of unpublished cases that follow this same reasoning. *See, e.g.*, *United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines that would have applied under *Norman*"[18] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*,

---

not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

[18] *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" because the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief"). When considering the 2018 congressional modifications to stacked penalties for § 924(c) convictions that are relevant here, the Fourth Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444 F. Supp. 3d at 723).

### 1.   <u>Family Circumstances of the Defendant</u>

The 2023 Sentencing Guidelines Amendments provide that family circumstances of the defendant could create extraordinary and compelling reasons that may justify a reduced sentence.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

(3) FAMILY CIRCUMSTANCES OF THE DEFENDANT. —
   *       *       *
   (C) The incapacitation of the defendant's parent when the
   defendant would be the only available caregiver for the parent.

U.S.S.G. § 1B1.13(b)(3)(C).

### 2.   <u>Unusually Long Sentence</u>

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering unusually long sentences as a basis for an extraordinary and compelling reason to grant compassionate release. The relevant section of U.S.S.G. § 1B1.13(b) reads:

(6)     UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

### D.     Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

## IV. Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 110.) While Mr. Marzouk has exhausted his administrative remedies, (*See* ECF No. 102-4, at 3), the Court finds that Mr. Marzouk does not offer any "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). Even if he had done so, the § 3553(a) factors weigh against his release.

**A.    Mr. Marzouk's Family Circumstances Do Not Constitute "Extraordinary and Compelling" Reason for a Sentence Reduction**

Mr. Marzouk first argues that his parents' health is an extraordinary and compelling reason for compassionate release. (ECF No. 110, at 8.) This Court acknowledges the practical difficulties that Mr. Marzouk's parents suffer due to their health conditions and the likely emotional impact this issue has on Mr. Marzouk. (*See* ECF No. 110, at 8.) However, the 2023 Sentencing Amendments allow consideration only when "the defendant would be the *only* available caregiver for the parent." *See* U.S.S.G. § 1B1.13(b)(3)(C) (emphasis added).

Mr. Marzouk claims he is the only available caretaker for his parents, (ECF No. 110, at 10), but has not provided evidence to support this finding. *See* U.S.S.G. § 1B1.13(b)(3)(C); *United States v. Hooks*, No. 3:18-CR-59-MOC-DCK-1, 2021 WL 796156, at *3 (W.D.N.C. Mar. 2, 2021) (rejecting family circumstances as an extraordinary and compelling reason in part because defendant had not presented evidence that no one else could care for his family member). In fact, Mr. Marzouk has three sisters, two of whom reside with their parents.[19] (ECF No. 50 ¶ 14.) He provides no evidence that his sisters are somehow incapable of caring for their parents. Mr. Marzouk indicates that he plans to move back in with his parents and either work for his father's company or utilize his commercial driver's license. (ECF No. 110, at 14.) While these constitute appropriate plans for reentry into society, they do not demonstrate that he is the *only available* caregiver for his parents. *See* U.S.S.G. § 1B1.13(b)(3)(C). Therefore, the Court cannot deem Mr. Marzouk's parents' health to be an extraordinary and compelling justification for immediate release.

---

[19] The Court acknowledges that Mr. Marzouk's sisters may no longer live with their parents. However, Mr. Marzouk failed to supplement the record with any evidence showing otherwise.

**B.    Mr. Marzouk's 18 U.S.C. § 924(c) Stacking Assertion Does Not Constitute an "Extraordinary and Compelling" Reason for a Sentence Reduction**

Mr. Marzouk next contends that his sentence should be reduced because Congress ended the practice of "stacking" through enacting the First Step Act. (ECF. No 110, at 5.)  However, Mr. Marzouk fails to articulate how his reduced, 172-month sentence constitutes such a disparity that would be deemed "disproportionate to both 'the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct.'"  *McCoy*, 981 F.3d at 279 (quoting *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020)).  "The *McCoy* court explicitly made clear that 'not *all* defendants convicted under § 924(c) should receive new sentences.'"  *United States v. Guess*, 576 F. Supp. 3d 370, 374 (E.D. Va. 2021) (quoting *McCoy*, 981 F.3d at 287) (emphasis in original).  Rather, it is up to the court to perform "individualized assessments of each defendant's sentence" to determine whether extraordinary and compelling circumstances exist.  *McCoy*, 981 F.3d at 286.

> [I]n *McCoy*, the Fourth Circuit highlighted the following factors when it affirmed the compassionate release of four defendants:  (1) the defendants' "relative youth" . . . when the offenses were committed, (2) their lack of criminal history, (3) the time they had already served . . ., (4) the fact that § 924(c)'s mandatory minimums were the "lion's share" of their sentence lengths, and (5) their post-sentencing rehabilitation.

*Guess*, 576 F. Supp. 3d at 374 (citing *McCoy*, 981 F.3d at 277–79, 286).  This list is not exhaustive, but merely representative of some factors that may result in a finding of extraordinary and compelling reasons to justify compassionate release.

Considering the specific circumstances of Mr. Marzouk's offense, his 172-month sentence is appropriate.  Mr. Marzouk was both an organizer and a participant in four armed robberies of cigarette distributors over the course of just a few months. (ECF No. 50 ¶ 8.)  During each of these offenses, Mr. Marzouk and his co-conspirators "robbed at gunpoint employees of [multiple] businesses . . . through the use of threatened force and violence, took

property and money belonging to the businesses against the will of the employees[.]"  (ECF No. 50 ¶ 8.)  Through this scheme, Mr. Marzouk and his co-conspirators obtained over $150,000. (ECF No. 50 ¶ 27.)  Mr. Marzouk inflicted real and meaningful harm to the individuals he robbed or threatened with a gun, as well as on the businesses he stole from.

Furthermore, Mr. Marzouk was twenty-eight at the time of his sentencing.  His criminal history includes Assault and Battery as well as providing false statements during a criminal investigation.  (ECF No. 50 ¶¶ 37–38.)  Therefore, he cannot rely on relative youth or lack of prior criminal history to support relief.

Finally, the Court has previously reduced Mr. Marzouk's sentence from 384 months' incarceration to 172 months' imprisonment.  (*See* ECF No. 101 (sealed).)  If he were sentenced today, Mr. Marzouk would be subject to a mandatory minimum sentence of 168 months' imprisonment.  This four-month difference, when looking at the totality of the circumstances of Mr. Marzouk's offenses, is "not so drastic that it constitutes an extraordinary and compelling reason for relief."  *Hinton*, 2022 WL 988372 at *5.

### C.    The § 3553(a) Factors Do Not Support a Reduction in Mr. Marzouk's Sentence

Although Mr. Marzouk did not satisfy the requirement for an "extraordinary and compelling" reason for compassionate release, even if he had, the Court concludes that the § 3553(a) factors weigh against his release.  This Court speaks to those factors in the interest of creating a full record.  *See* 18 U.S.C. § 3553(a).

Upon review, Mr. Marzouk's criminal history and underlying convictions demonstrate that he presents an ongoing threat to the public and no conditions of release would sufficiently assure the safety of the community at this time.  In the underlying offense, Mr. Marzouk was convicted of Possessing and Brandishing a Firearm in Furtherance of a Crime of Violence, a

Hobbs Act Robbery. In both instances, Mr. Marzouk alerted his co-conspirators to the presence of an employee for the purpose of his co-conspirators holding those victims at gunpoint and robbing them. Not only did Mr. Marzouk participate in these crimes, but he helped to organize them. As a key orchestrator of a multipart and well-planned robbery scheme, Mr. Marzouk had ample time to consider his actions and their consequences and, at 28 years of age, abandon any criminal conduct. He instead chose to lead others in three carjackings and another armed robbery. The nature and circumstances of this crime and the role Mr. Marzouk played in it weigh against any early release.

Mr. Marzouk's sentence must "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment[.]" *See* 18 U.S.C. § 3553(a)(2)(A). A 172-month sentence is appropriate to effect these objectives and is only four months greater than the mandatory *minimum* that Congress now imposes for these offenses. *See* 18 U.S.C. 924(c). Moreover, Mr. Marzouk's criminal history shows that he has repeatedly disregarded the law. He was convicted of Assault & Battery in 2012, convicted of Making a False Statement During a Criminal Investigation in 2014, and then committed the underlying offenses while under a three-year term of good behavior. Even supervision did not discourage him from committing further criminal offenses. To further deter Mr. Marzouk from committing crimes and to protect the public, this Court finds it necessary that he serve his already-reduced 172-month sentence. *See* 18 U.S.C. §§ 3553(a)(2)(B–C).

Finally, the Court carefully considered all of the § 3553(a) factors when it reduced Mr. Marzouk's sentence in 2021. Nothing in this record commends any change from this prior assessment, and the Section 3553(a) factors continue to weigh against any further reduction. This reduction adjusted for "the kind[] of sentence and the sentencing range" now imposed for

commission of the same offense. 18 U.S.C. § 3553(a)(4). It even addressed "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), rendering his argument with regard to Mr. El Shamy unpersuasive.

## V.  Conclusion

For the reasons explained above, the Court will deny Mr. Marzouk's Motion for Compassionate Release, (ECF No. 110). Mr. Marzouk's *Pro Se* Motion for Reduction in Sentence, (ECF No. 102), is denied as moot.

An appropriate Order shall issue.

Date: 11/19/2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge